UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MICHELLE K. WATSON,

                             Plaintiff,                **REPORT AND RECOMMENDATION**
         -against-                         **14-CV-01033 (LDH)(LB)**

THE RICHMOND UNIVERSITY MEDICAL
CENTER, THE STATE UNIVERSITY OF
NEW YORK DOWNSTATE MEDICAL
CENTER, THE STATE OF NEW YORK,
EDWARD ARSURA, M.D., and
MAJA NOWAKOWSKI, Ph.D.,

                             Defendants.
-----------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

       Plaintiff Michelle K. Watson, M.D., originally proceeding *pro se*, commenced this

employment discrimination action alleging that Richmond University Medical Center

("RUMC") violated her rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. §§ 2000 et seq. After retaining counsel, plaintiff moved and was granted leave to amend

her complaint. In addition to RUMC, plaintiff's amended complaint names Dr. Edward Arsura

("Dr. Arsura"), Dr. Maja Nowakowski ("Dr. Nowakowski"), the State University of New York

Downstate Medical Center ("SUNY Downstate"), and the State of New York as defendants.

Plaintiff asserts Title VII claims against SUNY Downstate and equal protection claims pursuant

to 42 U.S.C. § 1983 ("section 1983") and Article I, § 11 of the New York State Constitution

against Dr. Nowakowski in her individual capacity. Plaintiff discontinued the case against the

State of New York. Dr. Nowakowski and SUNY Downstate (hereinafter the "State defendants")

now move to dismiss all claims against them. The Honorable LaShann DeArcy Hall referred this

matter to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b).[1] For the reasons stated below, it is respectfully recommended that the State defendants' motion to dismiss should be granted in part and denied in part.

## BACKGROUND

I.      Factual Background

For the purposes of this motion, all the well-pleaded allegations in plaintiff's amended complaint are taken as true and all inferences are drawn in her favor.

Plaintiff is a 42-year-old African-American woman. (Am. Compl. ¶ 9, ECF No. 36.)  She graduated with a Master of Science from the Touro College of Osteopathic Medicine in June 2009.[2] (Id. ¶ 21.) In May 2009, plaintiff was offered a one-year research fellowship through Empire Clinical Research Investigative Program ("ECRIP"). (Id. ¶¶ 16–17.) ECRIP is a New York State Department of Health ("NYSDOH") initiative that distributes grant money to hospitals and medical centers throughout the state to enable selected research fellows to complete research projects under the supervision of "sponsor-mentors," who are professors from participating institutions. (Id. ¶ 16.) As an ECRIP research fellow, plaintiff conducted research as part of a project titled "Cell-cell interactions in an in vitro model of inflammation in acne" under the supervision of Dr. Nowakowski, an Associate Professor of Pathology and Medicine at SUNY Downstate, and Director of Pre- and Post-Doctoral Education, Center for Allergy Research, at SUNY Downstate. (Id. ¶¶ 14, 17, 19.) Dr. Nowakowski explained to plaintiff that Coney Island Hospital ("CIH") would pay her salary and benefits, but that plaintiff would work out of the

---

[1] On February 22, 2016, this case was reassigned from the Honorable Roslynn R. Mauskopf to the Honorable LaShann DeArcy Hall.

[2] Although not stated in her amended complaint, plaintiff graduated from SUNY Buffalo School of Medicine and Biomedical Sciences in 2000.  (Compl., ECF No. 1 at 7.)

laboratory at SUNY Downstate. (Id. ¶ 23.) When asked why SUNY Downstate was not her employer, Dr. Nowakowski said that she "always had her grants set up like this." (Id.)

On plaintiff's first day as an ECRIP fellow in 2009, an African-American secretary in the Department of Pathology told Plaintiff that she was the first ever African-American research fellow in the history of the department. (Id. ¶ 25.) During the first year of her placement as an ECRIP fellow at SUNY Downstate, plaintiff was required to attend a weekly journal meeting with doctors, residents, medical students, and Ph.D.'s to discuss the latest medical literature; and, unlike other attendees, plaintiff only received the materials the day of or the day after the meetings. (Id. ¶¶ 27–28.) Plaintiff confronted problems receiving these materials throughout the duration of her time at SUNY Downstate. (Id. ¶¶ 28, 82.)

At the conclusion of her ECRIP fellowship in June 2010, Dr. Nowakowski offered plaintiff a two-year ECRIP fellowship for a new project titled "Allergic asthma among HIV-1 infected women on HAART." (Id. ¶ 29.) Dr. Nowakowski then presented a two-year agreement to Plaintiff ("First RUMC ECRIP Agreement") and informed plaintiff that RUMC would employ her for the duration of her fellowship. (Id. ¶¶ 29–33). In addition to a salary, the agreement provided expenses for travel, publications costs, and up to $75,000 for additional laboratory equipment, specifically a NiOx machine that was necessary for plaintiff's work on her designated project. (Id. ¶¶ 31–32.) Dr. Nowakowski and plaintiff signed and dated the First RUMC ECRIP agreement, and Dr. Nowakowski transmitted the agreement via facsimile to Dr. Arsura, whom plaintiff believes signed it. (Id. ¶ 33.) At this time, Dr. Nowakowski informed Plaintiff that RUMC, not CIH, was her employer. (Id. ¶ 34.) When plaintiff informed Dr. Nowakowski that she was satisfied with her employment with CIH, and asked why CIH was no

longer plaintiff's employer, Dr. Nowakowski stated that "she could not deal with Coney Island Hospital anymore," but provided no further information. (Id.)

In the second week of June 2010, CIH stopped paying plaintiff. (Id. ¶ 35.) However, plaintiff continued to work over the summer without any compensation or medical benefits while RUMC processed her employment paperwork. (Id.) Throughout July and August of 2010, plaintiff made numerous inquiries regarding her pay to Dr. Nowakowski. (Id. ¶¶ 36–37.) On one such instance, Dr. Nowakowski informed her that "the funds were not yet available" because the New York State legislature had not yet approved the budget. (Id.) Further, when plaintiff mentioned that she had no medical insurance, Dr. Nowakowski advised her to "go over to county and get some Medicaid." (Id.) At some point over the summer, Dr. Nowakowski instructed plaintiff to contact Dr. Arsura, Senior Vice President and Chief Medical Officer, at RUMC or Daniel P. Carmody at NYSDOH regarding her pay. (Id. ¶ 37.) Plaintiff spoke to Sharon Clark, Dr. Arsura's Administrative Secretary, but was told each time that the funds were not yet available. (Id. ¶ 38.) Plaintiff was unable to speak directly to either Dr. Arsura or Mr. Carmody. (Id. ¶¶ 38–39.)

On September 2, 2010, Sharon Clarke emailed Dr. Nowakowski to instruct plaintiff to complete the online application and to visit RUMC's Human Resources Department. (Id. ¶ 41.) On September 7, 2010, plaintiff visited the offices of Dr. Arsura, where she was instructed to complete additional paperwork, including a three- to five-page document ("RUMC Agreement"), which contained employment information about weekly hours, vacation information, compensation, and the name of the research project. (Id. ¶¶ 46–48.) On or about September 16, 2010, plaintiff began to receive bi-weekly paychecks from RUMC. (Id. ¶¶ 53–56.) Sharon Clark informed plaintiff that her two-year fellowship term had shifted to September because that was

when RUMC began to pay plaintiff. (Id. ¶ 53.) Plaintiff informed Dr. Nowakowski of the shift in the contract. (Id. ¶ 56.) The day after plaintiff received her first RUMC check, she received handwritten checks for her work over the summer. (Id. ¶ 58.)

Plaintiff alleges that the State defendants failed to provide her with the same networking and professional development opportunities, such as introductions to influential professors, doctors, editors of medical journals, and directors of residence programs, and lunchtime talks given by experts on various medical topics, as provided to similarly-situated ECRIP fellows, even though plaintiff requested to be included. (Id. ¶¶ 66–69.) Other ECRIP fellows were permitted to attend medical clinics and participate in the diagnosis and treatment of patients. (Id. 67.) When plaintiff expressed interest, however, Dr. Nowakowski said that she would "look into it," but made no effort to include plaintiff. (Id.)

Plaintiff further alleges that unlike those similarly situated to her, Dr. Nowakowski required plaintiff to perform job duties unrelated to her ECRIP research, including menial and custodial tasks such as cleaning Dr. Nowakowski's desk and refrigerator. (Id. ¶ 70.)  Dr. Nowakowski also required plaintiff to perform laboratory work that other fellows refused to perform, such as processing vials of blood from Lupus patients for the rheumatology laboratory, collecting and storing blood serum samples, maintaining a database for the pediatric nephrology department, and collecting blood or tissue samples and transporting them to another laboratory. (Id. ¶ 68.) Further, Dr. Nowakowski demanded that plaintiff deliver organs from dissected animals to other medical centers and laboratories around New York City at her own expense. (Id.)

On an occasion between July 1, 2011 and November 21, 2011, plaintiff asked Helen G. Durkin, Ph.D., ("Dr. Durkin"), the number of Ph.D. candidates she had successfully graduated,

to which she replied fifteen. (<u>Id.</u> ¶ 73.)   Plaintiff also asked Dr. Durkin how many of the graduates were female, to which she replied one. (<u>Id.</u>) Finally, plaintiff asked Dr. Durkin how many of her graduates were people of color and Dr. Durkin told plaintiff that none were. (<u>Id.</u>) Plaintiff inquired why and Dr. Durkin said, "I find that blacks for the most part do not want to dedicate the long number of years it takes to study and get a Ph.D. . . . Blacks just aren't willing to study so long for a number of years just to advance medical science . . . So I've never trained one." (<u>Id.</u>)

In October 2010, plaintiff asked Dr. Nowakowski to use part of her $75,000.00 equipment allocation, provided as part of the First RUMC ECRIP agreement, to purchase a new NiOx machine. (<u>Id.</u> ¶ 61.) Although the laboratory had a NiOx machine, it was past its expiration date and was no longer functional. (<u>Id.</u> ¶ 59.)  Dr. Nowakowski informed plaintiff that Dr. Arsura would purchase a new NiOx machine soon. (<u>Id.</u>) Three weeks later, plaintiff approached Dr. Nowakowski who again told plaintiff that the machine would be provided soon. (<u>Id.</u>) From approximately November 2010 until June 2011, plaintiff asked Dr. Nowakowski on average two times a week about the NiOx machine and, each time, Dr. Nowakowski stated the machine would be ordered soon. (<u>Id.</u> ¶ 61.) Plaintiff also attempted to speak to Dr. Arsura about the purchase of a NiOx machine. Plaintiff left voicemails with Dr. Arsura every week about the NiOx machine. (<u>Id.</u>) On October 31, 2011, plaintiff sent a price quote for a new NiOx machine to Dr. Arsura via facsimile. (<u>Id.</u> ¶ 62.) On November 1, 2011, plaintiff visited RUMC's Staten Island campus and confronted Dr. Arsura in person about the NiOx machine, to which Dr. Arsura responded that plaintiff should not worry, the machine was within budget, and he would order one the following day. (<u>Id.</u> ¶ 63.)  In early December 2011, plaintiff visited Dr. Arsura's

office for a second time as the NiOx machine had not been ordered, and explained that she had been unable to collect data for the research project. (Id. ¶ 64.)

On November 21, 2011, in the second year of the two-year ECRIP agreement, plaintiff sent a letter to Nirav Shah, M.D., Commissioner of the NYSDOH complaining that she was unable to obtain the NiOx machine and describing problems with how RUMC issued her paychecks. (Id. ¶ 74.) The following day on November 22, 2011, plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") claiming race discrimination. (Id. ¶ 75; see also State Def. Mot. at 35, Ex. A, ECF No. 59.)

After the NYSDOH inquired about plaintiff's letter, Dr. Nowakowski and Dr. Arsura transferred plaintiff to another project. (Am. Compl. ¶¶ 77–78.) The new project, which Dr. Nowakowski stated was an unfinished project by a previous fellow, was entitled "Mechanism of sophorolipid suppression of septic/endotoxic shock." (Id. ¶ 78.) At that time, plaintiff was required to sign a second agreement ("Second RUMC ECRIP Agreement"), which stated that the term of the project was from July 1, 2010 to June 30, 2012; described plaintiff's duties; and designated Dr. Nowakowski as the sponsor-mentor for plaintiff, Dr. Arsura as the project director, and RUMC as the sponsoring institution. (Id.) After plaintiff wrote the letter to the Commissioner of the NYSDOH, Dr. Nowakowski ceased teaching plaintiff or providing any instruction and rarely came to plaintiff's laboratory. (Id. ¶ 82). While plaintiff previously received the materials for the weekly journal clubs either the day of or after the meetings, after writing the letter to NYSDOH, plaintiff ceased receiving the materials for the journal club altogether. (Id.) Other ECRIP fellows began to use plaintiff's equipment without her permission, whereas prior to writing the NYSDOH letter, other fellows sought plaintiff's permission to use the equipment. (Id. ¶ 76.)

In late May 2012, Dr. Nowakowski asked plaintiff if RUMC had contacted her about her contract end-date, to which Plaintiff responded that they had not. (Id. ¶ 85.) Dr. Nowakowski then said, "Oh, I guess you're here 'till September." (Id.) However, in late June 2012, RUMC ceased paying Plaintiff. (Id. ¶ 86.) On July 23, 2012, plaintiff asked Dr. Nowakowski about her paycheck. (Id. ¶ 87.) Dr. Nowakowski instructed plaintiff to contact RUMC. (Id.) After plaintiff sent an email to Sharon Clark, Dr. Arsura responded on July 24, 2012 informing her that her contract had ended on June 30, 2012 and that RUMC would no longer pay her. (Id. ¶¶ 88–89.) Plaintiff confronted Dr. Nowakowski who did not respond to plaintiff's questions or comments. (Id. ¶ 92.) Plaintiff then gathered her belongings and left. (Id.)

II.     Procedural History

A.  Administrative Filings[3]

Plaintiff initiated a charge of discrimination by filing an intake questionnaire with the EEOC on November 22, 2011, in which she alleged discrimination on the basis of her race. (Am. Compl. ¶ 75, Def. Mot. Ex. A.) Plaintiff received a letter dated April 23, 2012 from the EEOC acknowledging receipt of her charge and assigning the EEOC charge number: 52-2012-00506. (Am. Compl. ¶ 83.) On September 20, 2012, Plaintiff also filed a charge with the New York State Division of Human Rights ("NYSDHR") alleging that RUMC discriminated against her on the basis of her race. (Id. ¶ 93.) Plaintiff received a right-to-sue letter from the EEOC dated December 30, 2013.[4] (Id. ¶ 94.)

---

[3]  The Court considers plaintiff's administrative filings on this motion to dismiss as they were attached to plaintiff's original complaint or are incorporated by reference within the amended complaint. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (On a motion under 12(b)(6) the court may consider "documents that are attached to the complaint or incorporated by reference" and any document "upon which the complaint *solely* relies and which is *integral* to the complaint . . . ." (emphasis in original)(citations omitted)).

[4]  Plaintiff received a right-to-sue letter from the EEOC dated May 3, 2013. (ECF No. 34-5.) However, the EEOC was unaware that plaintiff had filed a duplicate charge with the NYSDHR. When this information came to the EEOC's attention, the EEOC issued plaintiff another Notice of Right to Sue on December 30, 2013. (Am. Compl. ¶ 94.)

## B.  Original Complaint

Plaintiff, proceeding *pro se*, commenced this action by filing a complaint against RUMC within 90 days of receiving the EEOC's right-to-sue letter. (Compl., ECF No. 1.) Plaintiff's original pleading is on the form *pro se* employment discrimination complaint available from the Court. The sole defendant in the complaint is RUMC.  Plaintiff alleged that RUMC subjected her to discriminatory treatment on the basis of her race as an African-American, including the termination of her employment, retaliation, hostile work environment, failure to promote, and unequal terms and conditions of her employment. (Compl. ¶¶ 4, 7.) Plaintiff attached forty-four pages of letters and emails from the administrative proceedings in the instant action as well as certain unrelated grievances regarding plaintiff's medical school residency to her complaint.

## C.  Motion to Amend

Approximately eight months after she filed her *pro se* complaint, plaintiff retained counsel. (Notice of Appearance dated Oct. 30, 2014, ECF No. 29.) Thereafter, on February 12, 2015, plaintiff's counsel moved to amend the complaint to add new claims and defendants. RUMC opposed plaintiff's motion to amend. The Honorable Roslynn R. Mauskopf referred the matter to me for a Report and Recommendation. I issued a Report and Recommendation ("R&R") that granted plaintiff's motion to amend in part and denied it in part. (R&R, ECF No. 35.)  Although plaintiff was permitted to amend her complaint to add the State defendants, the R&R did not preclude the newly-named defendants or RUMC from responding to the amended complaint in any manner they deemed appropriate. (R&R at 2 n. 1.) On September 11, 2015, Judge Mauskopf adopted the R&R. (Order Adopting R&R, ECF No. 42.)

D.  Subsequent Events

Plaintiff filed the amended complaint on September 5, 2015.[5] (Am. Compl.)  RUMC and

Dr. Arsura (hereinafter the "RUMC defendants") answered plaintiff's amended complaint. (ECF

No. 51.)  The State defendants notified the Court of their intent to move to dismiss the amended

complaint.  (ECF No. 52.)  On January 11, 2016, following a pre-motion conference, plaintiff

voluntarily withdrew her claims against certain defendants by stipulation.[6] (Stip., ECF No. 55.)

As modified by the stipulation, plaintiff's amended complaint asserts the following

claims: disparate treatment under Title VII against RUMC, SUNY Downstate (Count I); hostile

work environment under Title VII against RUMC, SUNY Downstate (Count II); retaliation

under Title VII against RUMC, SUNY Downstate (Count III); a violation of her right to equal

protection pursuant to 42 U.S.C. § 1983 against Dr. Nowakowski in her individual capacity

(Count V); a wage claim under the Fair Labor Standards Act against RUMC, (Count VI); a

violation of her right to equal protection pursuant to Article I, § 11 of the New York Constitution

against Dr. Nowakowski in her individual capacity (Count VII); and, breach of contract of the

RUMC Agreement against RUMC and Dr. Arsura in his official capacity (Count IX).

E.  The Instant Motion

The State defendants move to dismiss all claims against them. (State Def. Mot., ECF

Nos. 58–59.) Plaintiff opposes the State defendants' motion, (Pl. Opp'n, ECF Nos. 60–61), and

the State defendants have replied, (State Def. Reply, ECF No. 62).

---

[5] Although plaintiff's counsel filed the amended complaint prior to the adoption of the R&R, it complied with the R&R and is the operative pleading. (See ECF No. 43.)
[6] The stipulation modified the amended complaint as follows: removed the State of New York as a defendant; removed the equal protection claim under 42 U.S.C. § 1981 in its entirety (Count IV); removed SUNY Downstate and Dr. Nowakowski, in her official capacity, from the equal protection claim under 42 U.S.C. § 1983 (Count VI); removed SUNY Downstate and Dr. Nowakowski, in her official capacity, from the New York State Constitutional claim (Count VII); and removed the breach of contract claim for the First ECRIP Agreement claim in its entirety (Count VIII). (Stipulation, ECF No. 55 at 2.) The Clerk of Court shall terminate the State of New York as a defendant herein.

**DISCUSSION**

The State defendants move to dismiss all claims against them on the grounds that plaintiff's Title VII claims against SUNY Downstate are unexhausted and time-barred and that plaintiff's section 1983 claim against Dr. Nowakowski is time-barred. In the alternative, the State defendants assert that plaintiff fails to state a claim upon which relief may be granted.

I.    Plaintiff's Title VII Claims Against SUNY Downstate are Untimely

While plaintiff sufficiently exhausted her administrative remedies against SUNY Downstate, she failed to initiate a federal court action against SUNY Downstate within time frame set forth by Title VII.  Accordingly, the State defendants' motion to dismiss should be granted and plaintiff's Title VII claims against SUNY Downstate should be dismissed.

A.    Administrative Exhaustion

A plaintiff must exhaust all administrative remedies prior to filing a Title VII suit in federal court.  See 42 U.S.C. § 2000e-5(e) and (f); Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 384 (2d Cir. 2015) ("It is well established that Title VII requires plaintiff to exhaust administrative remedies before filing suit in federal court." (citations omitted)).  To exhaust administrative remedies, a plaintiff must file a charge of discrimination with the EEOC or the comparable human rights agency.  See, e.g., Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). "The purpose of this exhaustion requirement is 'to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'" Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998) (quoting Stewart v. U.S. Immigration & Nat. Serv., 762 F.2d 193, 198 (2d Cir.1985)).

Title VII's implementing regulations, which define the information that must appear in an EEOC discrimination charge, require that a charge be in written form, identify the parties, and

generally describe the alleged discriminatory acts.   29 C.F.R. §§ 1601.9, 1601.12. These regulations "have been broadly interpreted, and courts look to the charging document as a whole in determining whether the plaintiff has met the exhaustion requirements." France v. Touro Coll., No. 14-CV-4613, 2016 WL 1105400, at *5 (E.D.N.Y. Feb. 16, 2016), R&R adopted sub nom. Ueth France v. Touro Coll., 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016).  Courts will find a charge sufficient if "[in] addition to the information required by the regulations . . . " the filing is "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 402 (2008).

Thus, "under this permissive standard a wide range of documents might be classified as charges," including intake questionnaires.  Id. at 402, 405. Following Holowecki, district courts in this Circuit have evaluated Title VII EEOC Intake Questionnaires and have determined that such filings constitute charges of discrimination. See Price v. City of New York, 797 F. Supp. 2d 219, 224 (E.D.N.Y. 2011); Mohamed v. NYU, No. 14 Civ. 8373, 2015 WL 3387218, at *10, 12 (S.D.N.Y. May 21, 2015), R&R adopted 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015); Robinson v. Macy's, No. 14 Civ. 4937, 2014 WL 6997598, at *6 (S.D.N.Y. Dec. 5, 2014) ("Plaintiff's Intake Questionnaire was a sufficient charge with the EEOC under federal regulations."); Brown v. City of New York, No. 11 Civ. 2915, 2013 WL 3789091, at *9 (S.D.N.Y. July 19, 2013).

Plaintiff argues that she exhausted her administrative remedies when she included SUNY Downstate in her EEOC Intake Questionnaire.  (Pl. Opp'n at 6.)  The Court agrees. Plaintiff checked the boxes on the EEOC intake questionnaire to indicate that her employer discriminated against her based on race. (Am. Compl. ¶ 75, State Def. Mot. Ex. A.)  Plaintiff listed "Richmond

University Medical Center & SUNY Downstate Medical Center" as her employer. (Id.) Further, under "name and title of immediate supervisor," plaintiff listed "Dr. Maja Nowakowski" and "Dr. Edward Arsura." (Id.) Plaintiff checked "Box 2," which states that she wished to file a charge of discrimination.[7] (Id.) Reviewing the intake questionnaire as a whole, the intake questionnaire plainly identifies SUNY Downstate as a party involved in the alleged discrimination based on plaintiff's race. Accordingly, plaintiff's intake questionnaire meets the requirements as set forth in the regulations and may be plainly "construed as a request for the agency to take remedial action to protect [plaintiff's] rights." Holowecki, 552 U.S. at 402.

The State defendants are correct, however, that the EEOC's December 30, 2013 right-to-sue letter did not list SUNY Downstate. (State Def. Reply. at 1.) Nevertheless, the EEOC's omission does not prevent plaintiff from demonstrating that she satisfied the administrative exhaustion requirement. The "EEOC's failure to comply with its statutory duty of providing notice to Title VII respondents does not prejudice a plaintiff's ability to maintain a Title VII claim against those respondents in federal court." Robinson, 2014 WL 6997598, at *8–9; see also France, 2016 WL 1105400, at *6 ("[P]laintiff should not be prejudiced by the EEOC's mistake."). Thus, under these circumstances, plaintiff's intake questionnaire constitutes a charge of discrimination and plaintiff successfully exhausted her administrative remedies against SUNY Downstate.

---

[7] In addition to checking Box 2 on the intake questionnaire, indicating her intent to file a charge of discrimination, plaintiff also checked Box 1, in which she requested to speak to an EEOC employee before filing a charge. The Court notes that plaintiff completed the intake questionnaire herself.  Plaintiff's intent to file a charge was clearly conveyed to the EEOC as she received a letter dated April 23, 2012 from the EEOC, acknowledging receipt of her charge and assigning the EEOC charge number: 520-2012-00506. (Am. Compl. ¶ 83.)

     B.   Filing Suit within 90 Days of Right-to-Sue Letter

A plaintiff must commence a Title VII lawsuit 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). The EEOC issued plaintiff a right-to-sue letter on December 30, 2013. The Court presumes that plaintiff received the letter three days after it was mailed. See Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525–26 (2d Cir. 1996). Thus, the suit against SUNY Downstate should have been filed by April 2, 2014. Plaintiff commenced this action against RUMC on February 14, 2014, but did not move to amend her complaint to add SUNY Downstate until February 12, 2015. As almost one year had passed before plaintiff moved to amend her complaint, plaintiff failed to file suit against SUNY Downstate within the 90-day time limit specified under Title VII.  Plaintiff cannot overcome this time-bar by way of equitable tolling or relation back.

     1.   Equitable Tolling

The 90-day time limit for commencing a lawsuit under Title VII is a non-jurisdictional prerequisite subject to "waiver, estoppel, and equitable tolling." Zipes, 455 U.S. at 393. "Equitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." Young v. Lord & Taylor, LLC, 937 F. Supp. 2d 346, 351 (E.D.N.Y. 2013) (citing Zerilli–Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80–81 (2d Cir. 2003) (citations and internal quotations omitted)).  Equitable tolling may be considered proper where a plaintiff actively pursued judicial remedies but timely filed a defective pleading, a plaintiff was unaware of her cause of action due to misleading conduct of defendant, or where a medical condition or mental impairment prevented a plaintiff from proceeding in timely fashion. Zerilli–Edelglass, 333 F. 3d at 80–81. The court must consider whether the party seeking equitable tolling "(1) has acted with reasonable diligence during the

time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Cohn v. KeySpan Corp., 713 F. Supp. 2d 143, 157 (E.D.N.Y. 2010) (citing Zerilli–Edelglass, 333 F.3d at 80–81 (citation and internal quotations omitted)). The plaintiff bears the burden of showing that the application of equitable tolling is appropriate. Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000).

Plaintiff's opposition to the motion fails to argue any basis for equitable tolling. Plaintiff's original pleading was not defective nor has she argued that SUNY Downstate misled her in an effort to prevent her from naming SUNY Downstate as a defendant. Plaintiff does not allege that she suffered from a mental or medical condition which prevented her from naming SUNY Downstate as a defendant. Moreover, as plaintiff timely filed her original *pro se* complaint against RUMC, it is doubtful that plaintiff could make an argument that her mental or medical condition interfered with her ability to timely file an action against SUNY Downstate. Without any argument to support equitable tolling, "the Court cannot justifiably conclude that [plaintiff] satisfied [her] burden of showing that this case presents the sort of rare and exceptional circumstances that warrant the application of the equitable tolling doctrine." Duchemin v. Inc. Vill. of E. Hampton, No. 14-CV-5976, 2015 WL 6680238, at *7 (E.D.N.Y. Oct. 31, 2015) (declining to apply equitable tolling doctrine and dismissing ADA claim as time-barred).

2.   Relation Back

Plaintiff argues that her Title VII claims against SUNY Downstate are timely under the relation back doctrine pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. "Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed

outside an applicable statute of limitations." <u>Krupski v. Costa Crocier S.p.A.</u>, 560 U.S. 538, 541 (2010); <u>VKK Corp. v. Nat'l Football League</u>, 244 F.3d 114, 128 (2d Cir. 2001). "The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." <u>Slayton v. Am. Exp. Co.</u>, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotations omitted). However, plaintiff fails to meet the requirements of Rule 15(c) and therefore her Title VII claims against SUNY Downstate do not relate back to plaintiff's original complaint.

Rule 15(c)(1) provides that an amendment relates back to the date of the original pleading when:

> The amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i)   received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii)   knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c); <u>Morales v. Cnty. of Suffolk</u>, 952 F. Supp. 2d 433, 436–37 (E.D.N.Y. 2013). These requirements must be met before an amended complaint that names a new party relates back to the original timely complaint. <u>Krupski</u>, 560 U.S. at 541[8]; <u>VKK Corp.</u>, 244 F.3d at 128.

---

[8] <u>Krupski</u> significantly changed the analysis of the "mistake" element in the relation back doctrine by concluding that relation back should not be denied solely on the basis that a plaintiff knew the identity of the previously unnamed defendant but did not include the defendant in the original complaint. <u>Krupski</u>, 560 U.S. at 549–52. Prior to <u>Krupski</u> where the plaintiff knew the identity of the newly-named defendant, it was generally held that plaintiff made a choice not to include the defendant in the original complaint, which would not constitute a "mistake concerning the proper party's identity." <u>Id.</u> After <u>Krupski</u>, a court must focus on defendant's knowledge for purpose of deciding whether relation back is proper under Rule 15(c). <u>Id.</u> at 541.

Plaintiff's Title VII claims against SUNY Downstate "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Plaintiff points to the language contained in the original complaint that alleged "an extremely hostile work environment at both RUMSCI and SUNY Downstate Medical Center." (Compl. at 4.) However, plaintiff fails to demonstrate that SUNY Downstate had notice of filing of this action.

To meet the notice requirement under relation back, a plaintiff must demonstrate that the newly-named party had notice of the lawsuit "within the period provided by Rule 4(m) for serving the summons and complaint." Fed. R. Civ. P. 15(c), At the time that plaintiff filed her complaint, the time period for service as set forth by Rule 4(m) was 120 days. As plaintiff filed her original complaint on February 14, 2014, she must demonstrate that SUNY Downstate was on notice of this lawsuit by June 16, 2014.[9]

Plaintiff's opposition argues that SUNY Downstate had notice of the lawsuit based on an inquiry from the NYSDHR as part of their administrative investigation and correspondence sent to SUNY Downstate. Plaintiff highlights (1) the November 21, 2011 EEOC Intake Questionnaire which lists SUNY Downstate as an organization that discriminated against her and (2) a December 13, 2013, letter from New York State Senator Kevin Parker addressed to SUNY Downstate President John F. Williams, regarding plaintiff's complaints of discrimination.[10]  (Pl. Opp'n 4, Compl. at p. 30–31.) However, the EEOC Intake Questionnaire and the letter from

---

[9]   One hundred and twenty days from February 14, 2014 was June 14, 2014, which fell on a Saturday.  Under Federal Rule of Civil Procedure 6(a)(1)(C), the limitations period expired on June 16, 2014, the following Monday.

[10]  Plaintiff urges the Court to consider a letter dated November 13, 2012, in which as part of their investigation NYSDHR directed that RUMC provide information concerning other RUMC employees supervised by Dr. Nowakowski and whether any of them had filed discrimination lawsuits.  (Pl. Opp'n 4; Schotter Aff., Ex. 1.)  This letter was not attached to the original or the amended complaints nor was it cited therein.  Accordingly, it cannot be considered by the Court on a motion to dismiss.  See Roth, 489 F.3d at 509.  Nonetheless, were the Court to consider this letter, it would not demonstrate that SUNY Downstate had notice of the instant suit.  The November 13, 2012 letter was issued over one year before plaintiff commenced the instant suit and merely requests that RUMC provide information regarding current and former RUMC employees.

Senator Parker <u>predate</u> the commencement of this action on February 14, 2014. Therefore, plaintiff's argument fails to demonstrate that SUNY Downstate had actual notice of the instant lawsuit within the time period prescribed by Federal Rule of Civil Procedure 15(c).

Plaintiff further fails to allege that SUNY Downstate had constructive notice of the lawsuit within the prescribed time period. "Under the constructive notice doctrine, the court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney knew that the additional defendants would be added to the existing suit." <u>Abdell v. City of New York</u>, 759 F. Supp. 2d 450, 455 (S.D.N.Y. 2010) (citations omitted)). SUNY Downstate, a public institution, and RUMC, a private institution, do not share counsel. Thus, the circumstances here do not demonstrate that SUNY Downstate had constructive notice of the lawsuit.[11]

As plaintiff fails to allege a basis for equitable tolling and cannot demonstrate that her Title VII claims against SUNY Downstate relate back to her original complaint, these claims are time-barred.  Accordingly, the State defendants' motion to dismiss plaintiff's Title VII claims against SUNY Downstate should be granted.

## II.    Plaintiff's Section 1983 Claim Against Dr. Nowakowski is Timely

Plaintiff's original complaint did not name Dr. Nowakowski as a defendant or assert an equal protection claim against her under 42 U.S.C. § 1983. Defendant argues that plaintiff's

---

[11] The Court has considered but declines to follow <u>Patrick v. Garlick</u>, 66 F. Supp. 3d 325, 331 (W.D.N.Y. 2014), which retroactively extended the Rule 4(m) period to likewise extend the relation-back time period. In <u>Garlick</u>, plaintiffs had only named their supervisor, not their employer, in their original complaint alleging claims for sexual harassment, a hostile work environment, and retaliation in violation of Title VII.  <u>Id.</u> at 327.  The Court allowed plaintiffs to name the employer, the Department of Parks, reasoning that "it learned of this action no more than 27 days after the 120-day Rule 4(m) period had expired." <u>Id.</u> In contrast here, plaintiff named RUMC, an entity subject to Title VII liability, and did not seek to add SUNY Downstate until nearly eight months after the Rule 4(m) period had expired.

section 1983 claim against Dr. Nowakowski is untimely because the statute of limitations had expired when the amended complaint was filed on September 5, 2015. (State Def. Mot. at 9.) The State defendants incorrectly use the date the amended complaint was filed to calculate the statute of limitations. "When a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes." Rotham v. Gregor, 220 F.3d 81, 96 (2d Cir. 2000) (citations omitted)); Bass v. World Wrestling Fed'n Entm't, Inc., 129 F. Supp. 2d 491, 508 (E.D.N.Y. 2001). Therefore, plaintiff is deemed to have commenced her section 1983 claim against Dr. Nowakowski on February 12, 2015, when she moved to amend her complaint.  (ECF No. 32.) Claims under section 1983 are governed by a three-year statute of limitations. Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (citing Owens v. Okure, 488 U.S. 235, 249–51 (1989)). As the last day that plaintiff appeared at SUNY Downstate as an ECRIP fellow was on July 24, 2012, (Am. Compl. ¶ 92), her section 1983 claim arguably expired three years later on July 25, 2015. Accordingly, the three-year statute of limitations on her section 1983 claim against Dr. Nowakowski had not expired when plaintiff moved to amend her complaint on February 12, 2015.

Thus, the State defendants' motion to dismiss plaintiff's section 1983 against Dr. Nowakowski on the ground that it is time-barred should be denied.

III.    Plausibility of Plaintiff's Section 1983 Claim Against Dr. Nowakowski

A.  Legal Standard on Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual

allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Iqbal, 556 U.S. at 678 (2009).

B.  Sufficiency of Claim

A public employee may state a claim pursuant to 42 U.S.C. § 1983 for employment discrimination under the Fourteenth Amendment.[12] Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87–88 (2d Cir. 2015). To sustain an equal protection claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution and laws of the United States; and (2) the alleged deprivation was committed by a person acting under color of state law.  Id. at 88–89 (citations omitted). Further, an individual defendant in a section 1983 action may only be held liable if she is "personally involved in the alleged deprivation." Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) (citations omitted). "Once the color of law requirement is met, a plaintiff's equal protection claims parallels [her] Title VII claim." Vega, 801 F.3d at 88 (quoting Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) (holding that because the equal protection claim parallels the Title VII claims, "[t]he elements of one are generally the same as the elements of the other and the two must stand or fall together")); see also Jemmot v. Coughlin, 85 F.3d 61, 67 (1996) ("[W]hen § 1983 is used as a parallel remedy with Title VII in a discrimination suit . . . the elements of the substantive cause of action are the same under both statutes.").

---

[12] For the purposes of this motion, the Court assumes without holding that plaintiff is a public employee. The State defendants' reply acknowledges it cannot be determined on a motion to dismiss whether SUNY Downstate is a joint employer.  (State Def. Reply at 1 n.1.)

For the purpose of this motion, plaintiff establishes that Dr. Nowakowski acted under color of state law and was personally involved in the alleged discrimination. "[S]tate employment is generally sufficient to render a defendant a state actor" under section 1983. Back v. Hastings-on-Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004) (citation omitted). Dr. Nowakowski is employed as a professor at SUNY Downstate, a state-funded institution. Moreover, as Dr. Nowakowski supervised plaintiff's ECRIP fellowship, plaintiff alleges she was personally involved in the alleged discrimination. Accordingly, plaintiff's equal protection discrimination claim under section 1983 shall be evaluated using the standards of a discrimination claim under Title VII.

Discrimination claims under Title VII are subject to the familiar *McDonnell-Douglas* burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). However, a plaintiff is not required to plead a *prima facie* case of discrimination as contemplated by the McDonnell-Douglas framework at the pleading stage. Vega, 801 F.3d at 84 (citing Littlejohn, 795 F.3d at 306, 311). At the pleading stage of a Title VII discrimination action, a plaintiff must plausibly demonstrate that she is a member of a protected class, qualified for the position, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.  Littlejohn, 795 F.3d at 311. In Vega, the Second Circuit further clarified what is sufficient at the pleading stage for a plaintiff to plausibly allege an adverse employment action and an employer's discriminatory intent.  Vega, 80 F.3d at 85–88.

An "adverse employment action" is "a 'materially adverse change' in the terms and conditions of employment." Vega, 80 F.3d at 85 (citing Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)). It "is more disruptive than a mere inconvenience or an alteration

of job responsibilities" and "may include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Vega, 801 F.3d at 85 (citing Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)).

Further, "[a]t the pleadings stage of an employment discrimination case, a plaintiff has a *minimal* burden of alleging facts suggesting an inference of discriminatory motivation." Vega, 801 F.3d at 85 (quoting Littlejohn, 795 F.3d at 310 (emphasis in original)).  To demonstrate that a plaintiff's protected class was a motivating factor in the adverse employment action, "the plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason . . . by alleging facts that directly show discrimination or facts that indirectly show discrimination giving rise to a plausible inference of discrimination." Id.

At this early stage in the litigation, plaintiff plausibly alleges that she was subject to an adverse employment action by Dr. Nowakowski.[13] Plaintiff alleges that she repeatedly requested, but was denied Dr. Nowakowski's assistance in acquiring a functional NiOx machine. (Am. Compl. ¶ 61.)  This machine was central to plaintiff's ability to perform her basic job duties as a researcher, (id. ¶ 31), because without the machine plaintiff could not collect data, (id. ¶ 64). Thus, Dr. Nowakowski's failure to acquire a functioning NiOx machine for plaintiff, which plaintiff alleges hindered her ability to complete her research on the designated project, could constitute a materially adverse employment action. Plaintiff also alleges Dr. Nowakowski

---

[13] Although a number of the discrete discriminatory acts alleged by plaintiff may have occurred early in her tenure at SUNY Downstate, the Court does not address the timeliness of these claims as such arguments were not raised by the State defendants' motion.

changed her research project,[14] (id. ¶ 78), and required plaintiff to sign the Second ECRIP Agreement that moved the contract end date, (id. ¶¶ 80–81).

Next, plaintiff plausibly alleges that these and other adverse employment actions were taken "at least in part for a discriminatory reason." Vega, 801 F.3d at 85. State defendants argue that plaintiff's allegations concerning Dr. Nowakowski's racial animus are conclusory and that Dr. Nowakowski's extension of plaintiff's fellowship for a second term undermines any inference of discrimination. (State Def. Mot at 17.) While the "same-actor inference" may undermine plaintiff's claim of discrimination at a later stage in this litigation, plaintiff has alleged enough at the pleading stage. Plaintiff's minimal burden here is to allege facts which give rise to an inference of discriminatory motivation.

Plaintiff alleges such facts regarding Dr. Nowakowski. Plaintiff alleges she was the only African-American ECRIP fellow in the history of the pathology department at SUNY Downstate. (Am. Compl. ¶ 25.) Plaintiff further alleges that in contrast to other fellows, Dr. Nowakowski demanded that plaintiff work for other laboratories performing tasks which other fellows refused to perform, such as processing vials of blood, (id. ¶ 68), and required plaintiff to clean her desk, sort her mail, and clean her refrigerator, (id. ¶ 69). Plaintiff also cites Dr. Nowakowski's comment that plaintiff "should go over to the county and get some Medicaid," as discriminatory. (Id. ¶ 36.) Viewed in the light most favorable to plaintiff, plaintiff has alleged sufficient facts to plausibly suggest an inference that Dr. Nowakowski's actions toward her were motivated, at least in part, by racial animus.

Accordingly, the State defendants' motion to dismiss plaintiff's equal protection claim against Dr. Nowakowski under section 1983 should be denied.

---

[14] The State defendants' argument that the change in plaintiff's project enhanced her employment position and therefore was not an adverse action may be raised after discovery. (State Def. Reply at 9.)

IV.     New York State Equal Protection Claim

Plaintiff's remaining claim against the State defendants is an equal protection claim under Article I, § 11 of the New York State Constitution against Dr. Nowakowski in her individual capacity.  Where remedies are available under section 1983, there is no private right of action under the New York State Constitution. G.D.S. v. Northport-East Northport Union Free Sch. Dist., 915 F. Supp. 2d 268, 280 (E.D.N.Y. 2012) (collecting cases); Jones v. Bay Shore Union Free Sch. Dist., 947 F. Supp. 2d 270, 282–83 (E.D.N.Y. 2013) (same). As plaintiff's equal protection under section 1983 shall proceed against Dr. Nowakowski, the State defendants' motion to dismiss plaintiff's equal protection claim pursuant to the New York State Constitution should be granted.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the State defendants' motion to dismiss plaintiff's Title VII claims against SUNY Downstate and plaintiff's New York State equal protection claim against Dr. Nowakowski should be granted.  The State defendants' motion to dismiss plaintiff's equal protection claim against Dr. Nowakowski under section 1983 should be denied.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period.  Failure to file a timely objection to this Report generally waives any further judicial review.  Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
Dated: June 24, 2016                    United States Magistrate Judge
       Brooklyn, New York